[Cite as *State v. Warnock*, 2024-Ohio-382.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-02-001 |
| - vs - | : | O P I N I O N<br>2/5/2024 |
| | : | |
| ZACHARY A. WARNOCK, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20220074

Nicholas A. Adkins, Madison County Prosecuting Attorney, Rachel M. Price and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Dennis C. Belli, for appellant.

**PIPER, J.**

{¶ 1} On May 12, 2022, Zach Warnock was indicted on one count of murder, two counts of felonious assault, one count of discharge of a firearm on or near a prohibited premises, and one count of tampering with evidence. The indictment arose from an incident on April 17, 2022, in which Ali Goins was shot and killed. Warnock pled not guilty to the charges and the matter proceeded to a three-day jury trial. Warnock timely appeals

his convictions.

**Relevant Factual Background**

{¶ 2}   The evidence revealed that Warnock and Ali met each other through an online dating application called "Plenty of Fish" in early April 2022.  They had a brief, but tumultuous relationship.

{¶ 3}   Ali and Warnock lived a few hours apart.  Ali resided in Sylvania, Ohio while Warnock lived in the Village of South Solon.  The night before the shooting, Ali's friends, Taylor and Tabitha, stayed the night at Ali's home. The three women planned to wake up early the next morning and drive to Warnock's home so that Ali and Warnock could spend time together.

{¶ 4}   The women drove down to South Solon as planned and parked in Warnock's driveway.  Tabitha and Ali got out of the car and began to approach Warnock's home.  Before they reached the door, Warnock exited the home and began firing his Glock 19 at them, shooting out the back window of their vehicle in the process.  The women jumped back in the car and sped away.  They eventually got lost and ended up stopped at the intersection of North Street and North High Street.

{¶ 5}   The record shows that Warnock and his brother, Alex, got in Warnock's Mustang and followed the women down the street.  Warnock was driving.  They eventually caught up to the women at the intersection North Street and North High Street.  When he got close enough, Warnock pointed his gun out of the driver's side window and fired several more bullets, striking Ali twice.

{¶ 6}   Tabitha drove the vehicle away in an effort to find medical care for Ali.  They eventually arrived at the Jefferson Township Fire Department.  However, efforts to revive Ali were unsuccessful and she died as a result of the gunshot wounds.

{¶ 7}   After the shooting, Warnock fled the scene.  He returned to his home and

parked his Mustang in the garage. He and Alex then got in Alex's Ford Fusion and returned to the intersection. There were eyewitnesses who reported seeing Warnock at the intersection picking up shell casings.

**{¶ 8}** The Madison County Sheriff's Office responded to calls reporting the second shooting. After picking up several of the casings, Warnock returned home with his brother where law enforcement officers were waiting.

**{¶ 9}** Alex made statements to law enforcement that were later admitted as excited utterances. Alex said he saw females in the driveway who he believed were trying to damage Warnock's truck. Alex said at least one of them was holding an object and that when he started to approach them, Warnock began firing at them.

**{¶ 10}** Warnock and Alex were taken to the Madison County Sheriff's Office for questioning. During trial, the state introduced a video recorded interview between Warnock and Sergeant Rodger Heflin. Warnock admitted that he fired shots while at his home but claimed to have done so because there was a man outside banging on his truck. He said the man had an object in his hand and posed a threat to his brother, Alex, who was standing nearby. Warnock then said the man drove away.[1] Warnock did not say that he followed after the vehicle; he instead mentioned that he had gone out to get cigarettes with Alex.

**{¶ 11}** Warnock offered no account of the second shooting at the intersection. When confronted with information that an eyewitness had seen him at the intersection picking up shell casings, Warnock acted incredulously. He indicated it was not possible anyone had seen him picking up shell casings at the intersection and attempted to misdirect the conversation "I wasn't out there * * * around fucking South Solon picking up

---

1. Warnock said in the interview that as the vehicle drove away, he started to think that it could have been "that girl" (referring to Ali) with another guy. He then gave a misleading account of his relationship with Ali.

* * * no, the brass casings were outside my door!" Warnock then stopped the interview saying that he thought they (the investigators) were trying to get him in trouble for something that happened on his property.

{¶ 12} On his way to jail, Warnock initiated a conversation with Deputy John Brenneman. Deputy Brenneman testified that Warnock asked who had died and Deputy Brenneman responded that he did not know. Warnock then said, "I didn't mean to shoot her or hurt anybody."

{¶ 13} Warnock's version of events changed drastically by the time of the trial. At trial, Warnock no longer denied being at the intersection. He admitted to firing at the vehicle but claimed that his actions were justified by self-defense. Warnock testified that he had been standing in the intersection with his gun in his hand as a "visual deterrent" and that he only fired because the women attempted to run him over with their car. Warnock said his previous story was a lie and that he lied because he was afraid he might be criminally charged for "picking up the shell casings" from the intersection.

{¶ 14} The jury found Warnock guilty on all counts. The trial court sentenced Warnock to an aggregate prison sentence of 36 to 39 years with 24 years being mandatory, up to life in prison. Warnock timely appeals, raising six assignments of error for review.

**Appeal**

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT VIOLATED EVID. R. 802 AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY ADMITTING CUSTODIAL STATEMENTS MADE BY HIS BROTHER TO INVESTIGATORS.

Hearsay and Relevancy Objection

{¶ 17} In his first assignment of error, Warnock argues the trial court erred by admitting improper hearsay statements.[2]  As noted above, Warnock and Alex were interviewed at the Sheriff's office.  Alex did not testify at trial, nor did the state attempt to introduce any recording of Alex's interview.  However, during trial, the state asked Sergeant Heflin about the interview with Alex.  At that point, Warnock's counsel made an objection.  In pertinent part:

> **[Warnock's counsel]:**  So, as I'm thinking this in my head, clearly anything Alex says to this deputy is hearsay for sure.  It would be out-of-court statements.  They would have to be offered, I'm assuming, for the truth of the matter.  Otherwise, I don't know how they'd even be remotely relevant.
>
> But I am struck by the idea of being able to put a detective on and say, hey, you interviewed an individual, and get into what he didn't say.
>
> It also sounds to me as if the absence - - I think the absence of a statement clearly isn't a declaration, but I don't know what he didn't say is relevant to anything.  I mean, he's not a party.  He hasn't been called as a witness.  And so I'm not sure how this is of any relevance whatsoever.
>
> **[The state]:** Your Honor, it's going to show the consistency between Alex and [Warnock's] responses and the lack thereof, their denial of certain things happening.  And we anticipate that [Warnock] will testify.  And so it's going to be our argument that he contrived this story with his brother, and we're able to show that by similarities between Alex's responses and [Warnock's] responses to very similar questions. And there wouldn't be statements.  It's a non-statement.

{¶ 18} The trial court overruled the objection for the following reasons:

> **[The Court]:** To the extent that he's not stating what Alex says, it's not an out-of-court statement made by somebody other than the declarant.  So it's not squarely hearsay.  At this point I would conditionally overrule that.  The impossible part

---

2.  While Warnock's trial counsel also questioned the relevancy of the testimony, Warnock's argument in this appeal focuses only on whether improper hearsay was admitted.

for the Court to assess in terms of relevance is I don't know what's relevant or not until I hear [Warnock's] testimony.

So at this point I would conditionally overruled the objection. Now how you put the * * * horse back in the barn, I don't know. What I can say is that if after [Warnock's] testimony - - you've represented that he's going to testify

* * *

So I'm taking that at its face in terms of assessing the relevance. If after his testimony this line doesn't appear relevant, I guess the best I can do is issue a curative instruction to say, you received testimony offered for this limited purpose, and based on the additional testimony, it's not relevant and you have to disregard it.

{¶ 19} The state then asked Sergeant Heflin a series of questions:

Q. Does Alex make any statements that verbal threats were made to him?

A. No.

Q. Does Alex make any statements that someone attacked him?

A. No.

Q. Does Alex make any statements about someone from a blue car having a gun or weapon?

A. No.

Q. Does Alex make any statements about an unknown party entering his home?

A. No.

Q. And you asked him all these questions?

A. Yes, sir.

Q. Is that a "yes"?

A. Yes.

Q. Okay. Does Alex make any statements regarding a necessity to defend himself from death or great bodily harm?

A. No.

### Standard of Review and Applicable Rules

{¶ 20} The admissibility of evidence is within the sound discretion of the trial court and the trial court is entitled to our deference in making decisions upon the admissibility of evidence. *State v. May*, 12th Dist. Warren No. CA2019-01-004, 2019-Ohio-4513, ¶ 8. As such, a trial court's decision admitting evidence will not be reversed absent an abuse of discretion. *Id.* An abuse of discretion is more than an error of law, it implies that the decision was unreasonable, arbitrary, or unconscionable. *State v. August*, 12th Dist. Warren No. CA2018-12-136, 2019-Ohio-4126, ¶ 21.

{¶ 21} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is generally admissible (except as elsewhere provided by law) and irrelevant evidence is not admissible. Evid.R. 402.

{¶ 22} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the enumerated exceptions in the rules or is otherwise excepted. *State v. Turner*, 12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 31; *State v. Villani*, 12th Dist. Butler No. CA2018-04-080, 2019-Ohio-1831, ¶ 22.

### Warnock's Arguments on Appeal

{¶ 23} Warnock argues that Alex's "responses" to Sergeant Heflin's questions are hearsay statements, concluding that Alex's "answers plainly qualified as statements under Evid. R. 801(A)(1)." Warnock then argues that reversal is necessary in this

instance because there is a reasonable possibility that the testimony was used by the jury to reject Warnock's claim of self-defense. He maintains that his credibility was "on the line" and the state used this testimony as a "credibility tiebreaker * * * in the form of the improperly admitted hearsay statements."

Analysis

{¶ 24} Following review, we find no error warranting the reversal of Warnock's conviction. As an initial matter, we agree that nonverbal conduct of a person or silence can constitute an assertion capable of being a hearsay statement in certain situations. Evid. R. 801. *See United States v. Kenyon*, 481 F.3d 1054, 1065 (8th Cir. 2007) (where silence itself can be considered such a nonverbal assertion); *Rahn v. Hawkins*, 464 F.3d 813, 821 (8th Cir.2006) ("[A] statement is attributable to a person when he or she stands silent in the face of its utterance if the natural response would be to deny it if untrue").

{¶ 25} The parties below discussed several issues, including whether Alex's silence amounted to inadmissible hearsay and whether it was even relevant. The trial court allowed the testimony ruling the responses were not "squarely hearsay," but noted that it could revisit the issue later on the basis of relevancy if appropriate and issue a curative instruction. Warnock's counsel did not raise this issue again and therefore no curative instruction was considered.

{¶ 26} We need not address the specific hearsay argument in this instance because it is well established that the constitutional guarantee to a fair trial does not necessarily mean a trial free of all error. *State v. Brown*, 65 Ohio St.3d 483, 485 (1992). That is, even if we were to find that such testimony was improper hearsay "[n]ot every error requires that a conviction be vacated or a new trial granted." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 24. Errors in evidentiary rulings are subject to review under the harmless error standard. *State v. Echavarria*, 12th Dist. Butler No. CA2003-

11-300, 2004-Ohio-7044, ¶ 20. A reviewing court considers whether an error had an impact on the verdict, whether the error was not harmless beyond a reasonable doubt, and whether the remaining evidence establishes the defendant's guilt beyond a reasonable doubt. *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 37.

{¶ 27} In this case, the admission of Sergeant Heflin's testimony concerning what Alex did not say had no prejudicial impact on the case. While Warnock argues the testimony was used as a "credibility tiebreaker," we note the jury had more than enough evidence to discount Warnock's credibility. The state introduced the video interview between Warnock and Sergeant Heflin where Warnock denied being at the location of the second shooting. When confronted with the suggestion that eyewitnesses had seen him picking up shell casings, he doubled down. Yet, by the time of trial, Warnock admitted to being at the intersection, picking up shell casings, and shooting his gun in "self-defense." Warnock told the jury that he lied out of fear that he would be charged for picking up shell casings. That is, Warnock claimed that the lies and inconsistencies were because he was afraid of a possible charge for tampering with evidence. Whether Warnock's claims on the stand were believable were credibility determinations best weighed by the trier of fact. *State v. Penwell*, 12th Dist. Warren No. CA2022-05-026, 2023-Ohio-120, ¶ 23. Any error in the admission of testimony regarding Alex's responses is harmless as a matter of law. There was no impact on the verdict, any such error was harmless beyond a reasonable doubt, and the remaining evidence clearly establishes Warnock's guilt beyond a reasonable doubt. Warnock's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE PROSECUTOR ENGAGED IN MISCONDUCT AND DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS AND A

FUNDAMENTALLY FAIR JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY USING HIS INVOCATION OF HIS CONSTITUTIONAL RIGHT TO COUNSEL AND PRIVILEGE AGAINST SELF-INCRIMINATION, AND FACTS NOT IN EVIDENCE, TO CONVICT HIM.

{¶ 30} Warnock's second assignment of error argues the state denied him a fundamentally fair trial based on five instances of prosecutorial misconduct.[3] For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights. *State v. Elmore*, 111 Ohio St. 3d 515, 2006-Ohio-6207, ¶ 62. To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred. *State v. Jones*, 12th Dist. Butler No. CA2006-11-298, 2008-Ohio-865, ¶ 21.

{¶ 31} The focus of "an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. As such, prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27.

{¶ 32} As no objections were raised to the claimed instances of prosecutorial misconduct, we will review such for plain error. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless the error is obvious and but for the error, the outcome of the trial would have been different. *State v. Blacker*, 12th

---

3. Warnock makes no distinction between a fair trial and a "fundamentally fair" trial.

Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39.  Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.  *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

Failure to Redact

**{¶ 33}** Warnock's first argument relates to the video of his interview with Sergeant Heflin that was shown to the jury.  Warnock argues the state committed prosecutorial misconduct because it did not redact the invocation of his right to counsel.  However, Warnock provides no authority for his claim that the state was required to redact the invocation of his right to counsel.  He instead generally cites cases which forbid the prosecution from using an invocation of the right to counsel as substantive evidence of guilt.

**{¶ 34}** In this case, the record does not support the argument that the state used Warnock's right to counsel as substantive evidence of guilt.  The state simply showed Warnock's interview with Sergeant Heflin—to which there was no objection.  Therein, Warnock asked whether he was being arrested while Sergeant Heflin read him his *Miranda* rights.  Warnock made an ambiguous request for counsel, where he said that he wanted to be "released" until he could have his attorney present.  Sergeant Heflin told him that he was not going to be released.  Warnock then waived his rights and began answering the questions asked until he was confronted about his presence at the intersection where he was seen picking up shell casings.  Thereafter, Warnock invoked his right to counsel because he thought the investigators were trying to get him in trouble.[4] There is simply no merit to any suggestion that the state used his invocation of counsel

---

4. Since there was no objection at trial, there was no efforts by the parties below to indicate precisely when the video was even turned off.

- 11 -

as substantive evidence of guilt. We further note that even if there had been error, which there was not, it would not amount to plain error.

Impeachment on Right to Remain Silent

{¶ 35} Warnock's second argument is the state improperly impeached him with his post-*Miranda* exercise of his right to remain silent. During his testimony, Warnock admitted he lied to authorities during his interview in multiple respects, notably his claim that he was not present at the intersection of the second shooting. As noted previously, by the time of trial, Warnock admitted to perpetrating the second shooting at the intersection, but claimed that he did so in self-defense. On cross-examination, the state asked Warnock "[f]air to say this is the very first time you have publicly shared this version of events?" Warnock then answered "[y]es. I was advised by my counsel to remain silent, invoke my Fifth Amendment right and shut up until trial."

{¶ 36} Although the state is not permitted to impeach a defendant on their post-arrest, post-*Miranda* silence, we disagree that it occurred in this circumstance. *See State v. Rowland*, 12th Dist. Warren No. CA2019-08-084, 2020-Ohio-2984, ¶ 46, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240 (1976). Prior to invoking his right to counsel, Warnock told the detectives that he had not been at the location of the second shooting. That version of events was inconsistent with the story he told the jury admitting the shooting at the second location but claiming it was done in self-defense. The state then impeached Warnock briefly asking whether this was the first time he publicly shared this version of events, which was drastically different than the version he shared with Sergeant Heflin during the interview. We find no error, plain or otherwise, given that the state was within its right to impeach Warnock during cross-examination. *State v. Pichardo-Reyes*, 12th Dist. Butler No. CA2016-09-184, 2017-Ohio-8534, ¶ 41. Moreover, we do not find that the outcome of the trial would have been different, nor did any manifest miscarriage

of justice occur.

<u>Warnock's Third, Fourth, and Fifth Arguments</u>

{¶ 37} Warnock's third argument is the prosecutor improperly impeached him with hearsay statements made by his brother, Alex. Warnock asserts that "[a] prosecutor is guilty of misconduct when 'under the guise of artful cross-examination,' he impeaches the accused with the substance of an inadmissible hearsay statement of a close family member." Warnock claims the state improperly questioned him about contriving a story with Alex. The small portion of the record cited by Warnock is where Warnock denied making up a story with Alex that there was no second shooting. Warnock then summarily argues "[t]he prosecutor crossed the line of propriety when he used a hearsay statement attributed to his brother, but never admitted in the State's case-in-chief, to impeach Warnock." We disagree with Warnock's conclusory argument and again note that the state was permitted to cross-examine and impeach Warnock. In this case, Warnock did contrive a story—his first version of the incident and the version he told at trial were clearly at odds. Whether Warnock contrived the story with his brother or did so by himself had no impact on the verdict. We disagree with Warnock's suggestion that the prosecutor "crossed the line of propriety."

{¶ 38} Warnock's fourth argument is the prosecutor made improper statements during closing argument suggesting that Warnock and his brother had acted to manufacture a story that there was no second shooting. He also adds that the state expressed its personal opinions about Warnock's guilt. We do not find any such misconduct. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences may be drawn therefrom. *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 69. Additionally, a "prosecutor may comment upon the circumstances of witnesses in their

testimony" and may argue "that these circumstances make the witnesses more or less believable and deserving of more of less weight." *State v. Nieves*, 8th Dist. Cuyahoga No. 111161, 2022-Ohio-3040, ¶ 50.

{¶ 39} Warnock's fifth argument is the prosecutor misstated the record with regard to ballistic evidence offered by the state. However, his fifth argument, as were his third and fourth arguments, is perfunctory and offered without sufficient explanation. This court will not create arguments on behalf of an appellant because it is not the duty of an Ohio appellate court to raise arguments for the parties. It is not this court's duty to root out an argument. *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 27.

Conclusion to Warnock's Second Assignment of Error

{¶ 40} Upon a full and thorough review of the record, we find none of Warnock's arguments, either when considered individually or collectively as a whole, have merit. As noted above, this court's inquiry into allegations of prosecutorial misconduct involve the fairness of the trial and prosecutorial misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 12th Dist. Butler No. CA2007-05-118, 2008-Ohio-5416, ¶ 27. In this case, Warnock's conviction was not based upon prosecutorial misconduct, but rather on overwhelming evidence of guilt. Warnock was not deprived of a fair trial. Warnock's claim that he acted in self-defense was simply rejected by the jury. Warnock's second assignment of error is overruled.

{¶ 41} Assignment of Error No. 3:

{¶ 42} THE TRIAL COURT'S DEFECTIVE SELF-DEFENSE INSTRUCTION AND INADEQUATE RESPONSES TO THE JURY'S QUESTIONS DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL AND RELIABLE JURY VERDICT.

{¶ 43} In his third assignment of error, Warnock claims the trial court erred in

providing its instructions to the jury. Jury instructions are matters that are left to the sound discretion of the trial court. *State v. Brannon*, 12th Dist. Clinton No. CA2014-09-012, 2015-Ohio-1488, ¶ 20. However, although left to the trial court's sound discretion, the trial court must nevertheless "fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 27. "[T]his court may not reverse a conviction based upon faulty jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Grimm*, 12th Dist. Clermont No. CA2018-10-071, 2019-Ohio-2961, ¶ 26. Therefore, when reviewing a trial court's jury instructions, this court must affirm a conviction if the trial court's jury instructions, when taken in their entirety, "fairly and correctly state the law applicable to the evidence presented at trial." *State v. Mott*, 12th Dist. Warren No. CA2022-10-067, 2023-Ohio-2268, ¶ 18.

{¶ 44} As there was no objection below, this assignment of error is also evaluated under the plain error standard of review. *State v. Evick*, 12th Dist. Clermont No. CA2018-03-016, 2019-Ohio-2791, ¶ 24.

### Jury Instructions

{¶ 45} Pursuant to R.C. 2901.05, a self-defense instruction is required if "there is evidence presented that tends to support that the accused person used the force in self-defense." Warnock argues there was no reason to tell the jury that a duty to retreat is an element of self-defense. He provides a conclusory argument that the inclusion of both "duty to retreat" and "stand your ground" language in its instruction "only increased the likelihood of juror confusion."

{¶ 46} It is well established that in cases involving use of deadly force, the elements of a valid claim of self-defense are as follows: (1) the accused was not at fault

- 15 -

in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means to escape from such danger was in the use of such force; and (3) the accused did not violate any duty to retreat or avoid the danger. *State v. Towson*, 12th Dist. Warren No. CA2021-08-069, 2022-Ohio-2096, ¶ 24. The amended "stand your ground" law in Ohio now provides that "a person has no duty to retreat before using self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B); *State v. Mitchell*, 1st Dist. Hamilton No. C-220471, 2023-Ohio-2604, ¶ 17. "Simply put, the new 'stand your ground' law removes, in most cases, the duty to retreat before using self-defense." *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 15.

{¶ 47} The trial court provided the following jury instruction regarding self-defense:

> To prove that the Defendant's use of deadly force was not in self-defense, the State must prove beyond a reasonable doubt at least one of the following:
>
> (1) Defendant was at fault in creating the situation giving rise to the incident; or (2) The defendant did not have reasonable grounds to believe that he was in imminent or immediate danger of death or great bodily harm; or (3) The defendant did not have an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm; or (4) The defendant violated a duty to retreat to avoid the danger; or (5) The defendant used unreasonable force
>
> * * *
>
> The Defendant has *no duty to retreat before using self-defense if the Defendant was in a place which he lawfully had a right to be. That means that the Defendant was not trespassing when he used force in self-defense.*

(Emphasis added.)

{¶ 48} Following review, we find the trial court did not commit error, much less plain error, by instructing the jury on self-defense. The trial court's instruction plainly states the appropriate elements of a valid self-defense claim and accurately states that a defendant

has no duty to retreat if in a place he had a lawful right to be. *See Ohio Jury Instructions*, CR Section 421.21 (Rev. Jan. 28, 2023). Thus, the jury was provided with a full and complete instruction that allowed the jury to weigh the evidence and discharge its duty as the finder of fact. *See Mott*, 2023-Ohio-2268 at ¶ 24. We disagree with Warnock's suggestion that the trial court's instruction "increased the likelihood of juror confusion."

Jury Questions

**{¶ 49}** Warnock also argues in his third assignment of error the trial court erred when answering the jury's questions. "[W]here, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). Thus, in response to a question from the jury, it is within the sound discretion of the trial court to provide supplemental instructions or to refer the jury to instructions already provided. *State v. Frymire*, 12th Dist. Butler No. CA2014-02-034, 2015-Ohio-155, ¶ 13.

**{¶ 50}** During jury deliberations, the jury submitted a question to the trial court asking why Warnock's brother Alex did not testify and whether his interview was part of the evidence. The trial court answered that it could not answer that question. The jury also submitted another question regarding the "at fault" element of the self-defense instruction. Specifically, the jury asked whether being "at fault" for the "situation" applied to the first shooting at Warnock's home or the second shooting at the intersection. The trial court answered that "[t]he issue of self-defense applied to the incident at the intersection. However, you may consider all evidence when considering the elements of self-defense."

**{¶ 51}** On appeal, Warnock argues that the jury should have been told that Alex's interview could not be considered as substantive evidence of his guilt. He also speculates

that the jury was "apparently confused about the relationship between Warnock's earlier conduct at his residence and its ramifications with respect to his use of deadly force at the intersection."

{¶ 52} After reviewing the record, we find the court acted within the scope of its discretion in answering the jury's questions. Clearly, the trial court could not answer why Alex did not testify at trial. It was not necessary for the trial court to delve further into the question. That Warnock now claims the trial court should have provided further explanation with regard to Alex's prior interview is unpersuasive. Furthermore, we decline to speculate that the jury was confused about the "at fault" instruction. *State v. Hager*, 12th Dist. Preble No. CA2016-12-011, 2017-Ohio-5670, ¶ 14 ("We will not reverse a conviction based on speculation"). We also note, based on our discussion above, Warnock cannot show any prejudice where there was ample evidence to support the conviction. Finding no error or plain error, we overrule Warnock's third assignment of error.

{¶ 53} Assignment of Error No. 4:

{¶ 54} THE CUMULATIVE EFFECT OF THE TRIAL COURT'S EVIDENTIARY AND INSTRUCTIONAL ERRORS, AND THE MISCONDUCT OF THE PROSECUTOR, DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR JURY TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶ 55} In his fourth assignment of error, Warnock argues that the cumulative effective of his claimed errors denied him a fair trial. According to the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v.*

*McClurkin*, 12th Dist. Butler No. CA2007-03-071, 2010-Ohio-1938, ¶ 105. However, we find that Warnock was not deprived of a fair trial and the cumulative error doctrine is inapplicable. Warnock's fourth assignment of error is overruled.

{¶ 56} Assignment of Error No. 5:

{¶ 57} DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, DUE TO THE COMBINED PREJUDICIAL IMPACT OF SEVERAL INSTANCES OF DEFICIENT PERFORMANCE DURING HIS MURDER TRIAL.

{¶ 58} Warnock's fifth assignment of error argues that his trial counsel was ineffective for failing to object to the same alleged instances of prosecutorial misconduct that he contests in his second assignment of error and with regard to the jury instructions and answers contested in his third assignment of error.

{¶ 59} To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that her trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 14. Failure of either prong is fatal to any claim of ineffective assistance of counsel. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49.

{¶ 60} This court has repeatedly held that trial strategy, even debatable strategy, is not a basis for finding ineffective assistance of counsel. *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 98; *State v. Wood*, 12th Dist. Madison No. CA2018-07-022, 2020-Ohio-422, ¶ 28. It is not the role of a reviewing court to second-guess trial strategy. *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 52.

{¶ 61} In this case, Warnock simply identifies the arguments he raised in his

second and third assignments of error and concludes his trial counsel's representation could not have been for strategic reasons and that the errors were so serious as to undermine confidence in the outcome of the trial. We disagree, and relate back to our discussion above. We further reiterate that Warnock cannot demonstrate prejudice for purposes of establishing ineffective assistance of counsel because he cannot "prove there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Clarke* at ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984). As noted repeatedly, Warnock's conviction was based upon substantial evidence and the fact he attempted to mislead law enforcement significantly diminished his credibility with the jury. Warnock's fifth assignment of error is overruled.

{¶ 62} Assignment of Error No. 6:

{¶ 63} THE TRIAL COURT'S FINDINGS FOR THE IMPOSITION OF CONSECUTIVE PRISON TERMS ARE CONTRARY TO LAW AND NOT CLEARLY AND CONVINCINGLY SUPPORTED BY THE RECORD.

{¶ 64} A felony sentence is reviewed under the standard in R.C. 2953.08(G)(2). That provision states that an appellate court may modify or vacate a sentence if the court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *Id.*

{¶ 65} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. R.C. 2929.14(C)(4) states:

> If multiple prison terms are imposed on an offender for
> convictions of multiple offenses, the court may require the
> offender to serve the prison terms consecutively if the court

finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

"When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel." *Id.* at ¶ 29, citing Crim.R. 32(A)(4). "[A] word-for-word recitation of the language of the statute is not required," though, "and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

**{¶ 66}** Following review, we find the trial court did not err by sentencing Warnock to consecutive prison terms. The record reflects that the trial court made the findings required by R.C. 2929.14(C)(4) when it ordered Warnock's sentences be served consecutively. The trial court found that consecutive sentences are necessary to protect the public and punish the defendant. The trial court also found that consecutive sentences are not disproportionate to the harm and that the harm was so great that a

single term does not adequately reflect the seriousness of the conduct.

**{¶ 67}** The trial court memorialized these findings within its sentencing entry. From the trial court's statements at the sentencing hearing and the language used in the sentencing entry, it is clear that the trial court complied with R.C. 2929.14(C)(4). *Bonnell* at ¶ 37; *State v. Sess*, 12th Dist. Butler No. CA2015-06-117, 2016-Ohio-5560, ¶ 35-38.

**{¶ 68}** In challenging the trial court's findings, Warnock argues that neither of the other two victims, Taylor and Tabitha, suffered physical injuries and casts doubt on their claims about the mental distress they have suffered since the fatal shooting of their friend.[5] However, we find the trial court addressed each of the required findings, and the record clearly supports the trial court's findings. Accordingly, Warnock's sixth assignment of error is overruled.

**{¶ 69}** Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.

---

5. In challenging the trial court's findings, Warnock relies on reasoning stated in *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607 (*Gwynne IV*). However, the Ohio Supreme Court vacated *Gwynne IV* on reconsideration. *See State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851 (*Gwynne V*).