[Cite as *State v. Crawford*, 2024-Ohio-691.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-04-022 |
| | : | O P I N I O N |
| - vs - | | 2/26/2024 |
| | : | |
| CODY AUSTIN CRAWFORD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No.2021 CR 0147


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Paul Croushore and Clyde Bennett, II, for appellant.


**M. POWELL, J.**

{¶ 1}  Appellant, Cody Austin Crawford, appeals his conviction in the Clermont County Court of Common Pleas for murder.

{¶ 2}  Appellant was indicted in February 2021 on one count of purposeful murder in violation of R.C. 2903.02(A) (Count 1), one count of felony murder in violation of R.C.

2903.02(B) (Count 2), and one count each of tampering with evidence and carrying a concealed weapon. Both murder counts were accompanied by a firearm specification. The tampering with evidence and carrying a concealed weapon charges were subsequently dismissed. In March 2023, the matter proceeded to a jury trial on the two counts of murder. Appellant testified on his own behalf.

{¶ 3} The murder charges stemmed from a February 14, 2021 incident during which appellant fatally shot Corey Lawwill. Testimony and other evidence presented at trial show that appellant went to his girlfriend's apartment complex on St. Andrews Drive on the evening of February 14, 2021, to deliver gifts. The evening was cold; there was snow and ice on the ground. After appellant parked his work truck near his girlfriend's building, he observed a verbal and physical altercation between Lawwill and a woman in the parking lot. From what appellant gathered, the altercation was over drinking and driving. Lawwill was trying to leave in his car and was slamming the woman between the car and the driver's door. Feeling scared by the altercation between Lawwill and the woman, appellant grabbed his 9 mm Glock semiautomatic pistol, exited his truck, and proceeded to his girlfriend's apartment. The altercation between Lawwill and the woman was still ongoing when appellant returned to his truck after delivering the gifts. Appellant testified that Lawwill's treatment of the woman made him both angry at and afraid of Lawwill.

{¶ 4} After appellant returned to his truck, he was texting his girlfriend's roommate about the gifts when his truck was struck by Lawwill's vehicle. Lawwill's car had struck the rear of appellant's truck, moving the back end a few feet to the left. Lawwill's car then hit a curb and stopped just past appellant's truck. Uninjured but angry, appellant jumped out of his truck, did not look at the damage to the truck, and ran to Lawwill's car as Lawwill was getting out. Appellant testified that he was scared when he recognized Lawwill as

- 2 -

the driver because he did not know what would happen next. Nevertheless, appellant yelled at Lawwill and called him a "dumb motherfucker." As Lawwill turned to run away, appellant grabbed Lawwill's arm to prevent him from fleeing and a struggle ensued. During a police interview, appellant told an officer that he landed several blows to Lawwill's head and body and was unsure if Lawwill landed any blows. At trial, appellant testified that Lawwill landed numerous blows to his torso and took him to the ground. Using his mixed martial arts training, appellant placed Lawwill in a triangle chokehold. Appellant testified that when he released Lawwill from the chokehold, Lawwill grabbed a knife from behind his back and approached appellant. Appellant pushed Lawwill away but in doing so, fell on his back. As Lawwill began to approach appellant with the knife, appellant removed his Glock from his vest pocket and shot Lawwill four times. Appellant then returned to his truck, cleared his Glock and placed it on the driver's seat, and called 9-1-1 to report the incident. As Lawwill was screaming in pain, appellant did not check on him or render aid. During the police interview, appellant explained that Lawwill was "a piece of shit" and that he did not see the need to help an abusive individual. Lawwill died later that evening.

{¶ 5} Several officers responded to the scene. Police recovered three spent shell casings on the ground, two firearms and several rounds of ammunition in appellant's truck, and a knife and cellphone on appellant's person. The fourth spent shell casing was later recovered from the vehicle of one of the responders. However, despite a thorough and lengthy search of the crime scene, police were unable to locate the knife Lawwill brandished at appellant. The next day, the Pierce Township fire chief returned to the scene and carefully shoveled away blood-stained snow; however, he did not find a knife.

{¶ 6} During the 9-1-1 call and the police interview, appellant claimed he had acted in self-defense. Appellant had scratches on his elbows and knees and abrasions

on his knuckles, but no major injuries. Following the police interview, appellant was arrested for murder and incarcerated. He made bond and was released from the county jail.

{¶ 7} On February 25, 2021, two police officers returned to the scene where they took photographs and searched for any evidence that may have been overlooked. They found nothing. On February 26, 2021, two days after appellant's release on bond, police received a call from a resident of the St. Andrews Drive apartment complex advising that a knife had been found in the area where the officers had searched the previous day. The knife had a locking mechanism and required two hands to open and close. It was found closed. The only DNA found on the knife was Lawwill's.

{¶ 8} The coroner testified that Lawwill was shot four times from three to four feet away. One bullet entered the back of Lawwill's right forearm, travelled slightly upward, and exited on the front of the forearm; one bullet entered the front of Lawwill's right thigh, travelled upward through the scrotum, and exited the lateral side of the left buttock; one bullet entered the back of Lawwill's left thigh and exited the front of the thigh, slightly downward; and one bullet entered Lawwill's chest on the lateral right side, travelled through the chest, and came to a stop near Lawwill's left armpit. The coroner testified that the gunshot wounds to Lawwill's torso and right leg were consistent with Lawwill being turned with his side toward the shooter and inconsistent with Lawwill approaching the shooter.

{¶ 9} Prior to trial, appellant requested that the trial court instruct the jury on self-defense. At the conclusion of the jury trial, the trial court denied appellant's request on the ground the evidence did not support a finding that appellant was not at fault in creating the situation giving rise to the affray. On March 9, 2023, the jury found appellant guilty of both purposeful murder and felony murder and their accompanying firearm specifications.

According to the trial court's sentencing entry, "the State agreed" that the two murder offenses and their accompanying firearm specifications "merge by operation of law," "elected to proceed as to sentencing on [the purposeful murder offense]" and its accompanying firearm specification "and dismiss [the felony murder offense] along with [its firearm] specification." The trial court sentenced appellant to a prison term of 15 years to life for the purposeful murder conviction and a consecutive three-year prison term for the firearm specification.

{¶ 10} Appellant now appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN FAILING TO DISMISS THE MURDER CHARGES WHERE THE MANIFEST WEIGHT OF THE TESTIMONY DEMONSTRATED THAT THE CAUSE AND MANNER OF COREY LAWWILL'S DEATH WAS HIS ATTACK ON CODY CRAWFORD, AND THE FACTS DEMONSTRATED THAT CRAWFORD WAS DEFENDING HIMSELF AGAINST A VIOLENT ATTACK.

{¶ 13} Appellant argues that "[t]he evidence presented at trial demonstrated as to Count One that [he] did not purposely cause the death of Corey Lawwill because he lacked the specific intent to do so as required by R.C. § 2903.02(A)."[1]

{¶ 14} An appellant bears the burden of affirmatively demonstrating error on appeal and substantiating his arguments in support thereof. *State v. Hager*, 12th Dist. Preble No. CA2016-12-011, 2017-Ohio-5670, ¶ 14. App.R. 16(A)(7) requires an appellate brief to include reasons in support of an assignment of error with citations to

---

1. Appellant also summarily argues that the evidence presented at trial regarding the felony murder offense shows "that he did not cause the death as a proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree" under R.C. 2903.02(B). However, at sentencing, the two murder offenses and their accompanying firearm specifications were merged and the state elected to proceed on the purposeful murder offense (Count 1) and its firearm specification. Because no sentence was imposed for the felony murder conviction, there is no final appealable order relating to that offense, and we decline to address appellant's arguments regarding the felony murder offense. Even if we were, appellant's argument would be disregarded under App.R. 12(A)(2) and 16(A).

authorities, statutes, and parts of the record relied upon. If a party fails to identify the error in the record upon which the assignment is based or argue an assignment as required by App.R. 16(A), an appellate court may disregard the assignment of error. App.R. 12(A)(2).

{¶ 15} Appellant's argument under this assignment of error merely consists of the conclusory sentence quoted above. Appellant fails to cite to the record and does not offer any analysis of the assigned error. It is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 12th Dist. Warren No. CA2014-08-107, 2015-Ohio-3522, ¶ 27. Nor is it the duty of an appellate court to search the record for evidence to support an appellant's argument as to alleged error. *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998).

{¶ 16} In light of appellant's lack of briefing, his first assignment of error is overruled. *See id.*, citing *Hawley v. Ritley*, 35 Ohio St.3d 157 (1988).

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN SUBSTITUTING ITS JUDGMENT AS TO THE FACTS OF SELF-DEFENSE AND DETERMINING THAT MR. CRAWFORD WAS AT FAULT IN CREATING THE SITUATION AND THUS REFUSING TO PROPERLY INSTRUCT THE JURY.

{¶ 19} Appellant argues the trial court erred by denying his request for a self-defense jury instruction.

{¶ 20} Appellant requested a jury instruction on self-defense pursuant to R.C. 2901.05(B)(1), which now provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in

self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused did not use the force in self-defense, * * * as the case may be.

{¶ 21} R.C. 2901.05(B)(1) places the initial burden of producing evidence "that tends to support" a self-defense claim upon the defendant. *State v. Sturgill*, 12th Dist. Clermont No. CA2020-03-018, 2020-Ohio-6665, ¶ 19. Thus, "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 25. "Similarly to the standard for judging the sufficiency of the state's evidence, if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *Id.* The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Sturgill* at ¶ 17.

{¶ 22} The elements of self-defense in a case involving the use of deadly force are that (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid danger. *State v. Delehanty*, 12th Dist. Warren No. CA2021-04-041, 2023-Ohio-337, ¶ 79. The elements of self-defense are cumulative and therefore self-defense is inapplicable to a defendant who fails to satisfy any one element. *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶ 23} An appellate court "reviews whether a claim of self-defense is subject to the sufficiency-of-the-evidence standard de novo." *State v. Palmer*, Slip Opinion No. 2024-Ohio-539, ¶ 16. "And when a trial court refuses to give a requested jury instruction, the

proper standard of review is whether the trial court abused its discretion under the facts and circumstances of the case." *Id.*

{¶ 24} In deciding whether a self-defense instruction should be given, the trial court must view the evidence in a light most favorable to the defendant without regard to credibility. *State v. Ratliff*, 8th Dist. Cuyahoga No. 111874, 2023-Ohio-1970, ¶ 28. If there is conflicting evidence on the issue of self-defense, the instruction must be given to the jury. *Id.* However, "'if the evidence generates only a mere speculation or possible doubt, the evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.'" *Id.*, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978). Finally, a defendant's bare assertion that he acted in self-defense will be insufficient. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 20.

{¶ 25} Upon a thorough review of the record, we find that the trial court did not err in denying appellant's request for a self-defense jury instruction because the evidence presented at trial shows that appellant was at fault in creating the situation giving rise to the affray. In other words, appellant failed to produce evidence that tends to support his claim he acted in self-defense and he therefore did not meet his burden of production.

{¶ 26} "[T]he first element of a self-defense claim does not require in all situations that the [defendant] must have refrained from throwing the first punch." *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 Ohio App. LEXIS 329, *9 (Jan. 22, 2002); *State v. Gillespie*, 172 Ohio App.3d 304, 2007-Ohio-3439, ¶ 17 (2d Dist.). Rather, the first element of a self-defense claim provides that the defendant must not be at fault in creating the situation that gave rise to the affray. *Nichols* at *9-10. This concept is broader than simply not being the immediate aggressor. *Id.* at *10. A person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense. *Id.; State v. Lewis*,

12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 27.

**{¶ 27}** By his own admission, appellant, a stranger to Lawwill, initiated the encounter when he jumped out of his truck, ran to Lawwill's car without checking the damage caused to his truck, angrily confronted Lawwill, calling him a "dumb motherfucker," and prevented Lawwill from leaving the scene by forcibly grabbing his arm. Ohio courts have long recognized that a defendant is at fault in creating the situation giving rise to the affray when the defendant chooses to confront the victim or knowingly go to a place where the victim will be, even when the defendant's action was otherwise completely lawful. *State v. Elam*, 12th Dist. Butler No. CA2021-08-106, 2022-Ohio-1895, ¶ 15.

**{¶ 28}** Appellant argues, however, that Lawwill started the confrontation when he crashed into appellant's truck. By his own admission, appellant had witnessed Lawwill's altercation with a woman on the parking lot, which made him scared, and considered Lawwill to be "a piece of shit" and potentially violent. Nonetheless, appellant chose not to stay in his truck following the crash and instead willingly advanced toward a potentially volatile situation and voluntarily entered into an argument with Lawwill by physically and verbally confronting him. By choosing to confront Lawwill in the foregoing manner, appellant created the very situation which he claims necessitated use of deadly force. *See Nichols*, 2002 Ohio App. LEXIS 329.

**{¶ 29}** Appellant has filed a notice of supplemental authority directing our attention to *Palmer*, 2024-Ohio-539, where the Ohio Supreme Court reversed this court's affirmance of a trial court's refusal to provide a self-defense jury instruction.[2] The supreme court held that the refusal to provide the instruction was an abuse of discretion

---

2. The supreme court released the *Palmer* opinion on February 15, 2024.

because the trial court discounted the evidence of self-defense based upon weight and credibility considerations. *Id.* at ¶ 22. The supreme court held that in properly assessing the issue, "[t]he question is not whether the evidence should be believed but whether the evidence, *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense." (Emphasis sic.) *Id.* at ¶ 21, citing *Messenger*, 2022-Ohio-4562 at ¶ 25-26.

**{¶ 30}** In this case, unlike *Palmer*, the trial court neither weighed the evidence supporting self-defense nor considered its believability. On the contrary, the trial court acknowledged that: the evidence must be viewed in a light most favorable to the appellant; credibility is not to be considered; and if there is conflicting evidence on the issue, the instruction must be given. The trial court declined to provide the self-defense jury instruction upon finding the evidence was insufficient that appellant was not at fault in creating the situation giving rise to the affray. The trial court based this finding upon appellant's uncontroverted testimony that he exited his truck, confronted Lawwill, called Lawwill a "dumb motherfucker," and then forcibly restrained Lawwill from leaving the scene. Thereafter, the confrontation became physical and culminated in appellant mortally wounding Lawwill. Construing that evidence most strongly in appellant's favor, no reasonable juror could have found that appellant was not at fault in creating the situation giving rise to the affray.

**{¶ 31}** In light of the foregoing, appellant failed to meet his burden of production on this first element of self-defense and therefore was not entitled to the jury instruction. Appellant's second assignment of error is overruled.

**{¶ 32}** Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.

- 10 -