[Cite as *State v. Bullock*, 2026-Ohio-693.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                     :

    Appellee,                                     :

                             CASE NO. CA2025-05-044

vs.                                                       :

                             <u>OPINION AND</u>
                             <u>JUDGMENT ENTRY</u>
DARIAN LEE BULLOCK,                            :            3/2/2026

    Appellant.                                    :

                             :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CR 000562


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, Assistant Prosecuting Attorney, for appellee.

Denise S. Barone, for appellant.


## **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Darian Lee Bullock appeals from his convictions on multiple felony offenses. Finding no error, we affirm.

## I. Factual and Procedural Background

### A. The Underlying Events

{¶ 2}   Bullock and Michaiah York were in an intermittent romantic relationship and shared an eight-year-old child. A few days before August 27, 2024, York ended the relationship and asked Bullock to leave her residence in Williamsburg, Ohio. On August 27, 2024, following a confrontational phone call, Bullock entered York's home without permission.

{¶ 3}   According to the State's evidence at trial, Bullock pointed a firearm at York and threatened to blow her brains out. He then placed his hands around her neck and choked her for approximately 15 seconds, applying enough pressure to prevent her from inhaling. Bullock also struck York with an open hand. Bullock prevented her from leaving. According to York's testimony, Bullock told her that he intended to place her in a car and that an individual named C.J. was going to shoot her. At one point, York fled through the back door of the home. Bullock pursued her, running around the garage and jumping a fence to catch her. When he caught up with York, he grabbed her by the back of her head and shirt, threw her to the ground, and kicked her in the side of the head.

{¶ 4}   York eventually escaped to a neighbor's home, where she called 911. When officers arrived, they found York frantic, crying, and hyperventilating. Multiple witnesses, including neighbors and responding officers, observed her distraught condition. Her grandfather, James York, arrived at the neighbor's residence and also observed his granddaughter's emotional state. Officers recovered an audio recording of the incident from York's computer and, after receiving a tip, later recovered a firearm from the residence.

### B. Procedural History

{¶ 5}   On August 29, 2024, a grand jury indicted Bullock on one count of

aggravated burglary with firearm specifications, one count of felonious assault with firearm specifications, two counts of kidnapping with firearm specifications, one count of abduction with firearm specifications, three counts of strangulation, and one count of domestic violence. On September 3, 2024, Bullock pleaded not guilty to all charges.

{¶ 6} The case proceeded to jury trial on February 18, 2025. The trial was scheduled to conclude on February 20, 2025. Before the trial resumed on February 19, the trial court was informed that two jurors were unavailable: one reported illness, and the other reported inability to attend due to weather conditions. With no objection from either party, the trial court discharged both jurors and seated the two alternate jurors who had been selected.

{¶ 7} On February 20, 2025, the trial court learned that a third juror had fallen overnight and broken her leg, rendering her unavailable for jury service. Because both alternates had already been seated, the trial court excused the jury and continued the matter to the following day to assess the injured juror's condition. On February 22, 2025, the trial court informed the parties that the injured juror remained unable to serve and continued the trial to March 11, 2025. Neither Bullock nor the State objected to the continuance. The trial court discussed the continuance on the record with Bullock, who acknowledged his agreement with this course of action. Before releasing the jury, the trial court admonished the jurors not to discuss the case or form any opinions until they had heard all the evidence and received instructions. The trial resumed on March 11, 2025, and concluded that same day.

{¶ 8} During James York's testimony, he was asked whether he had ever seen his granddaughter as upset or scared as she appeared on the morning of August 27, 2024. York began to answer by referencing his experience as a paramedic and then alluded to his service in Vietnam. Defense counsel objected on grounds that the testimony

- 3 -

was unduly prejudicial. The trial court overruled the objection, and the prosecutor followed up by asking York to clarify whether he was stating that he had not seen anyone as scared as Michaiah York since his time in Vietnam. York confirmed this characterization. During closing argument, the prosecutor referred to York's testimony and his Vietnam comparison.

{¶ 9} During deliberations, the jury sent a note to the court indicating that it had reached agreement on two of the nine counts but was having difficulty progressing on the remaining charges. The trial court instructed the jury to continue deliberations in an effort to reach a verdict.

{¶ 10} The jury returned a mixed verdict. It found Bullock guilty of kidnapping, a first-degree felony; abduction, a third-degree felony; strangulation, a fourth-degree felony with a specification of family or household member or dating relationship; strangulation, a fifth-degree felony; and domestic violence, a first-degree misdemeanor. The jury found Bullock not guilty on the remaining counts and not guilty on all firearm specifications.

{¶ 11} The trial court sentenced Bullock to an indefinite prison sentence of 10 to 15 years on the kidnapping offense, 12 months each on the abduction and strangulation offenses (having merged the two strangulation offenses), and 180 days in jail on the domestic-violence offense. The court ordered all sentences to run concurrently, for an aggregate indefinite prison term of 10 to 15 years.

{¶ 12} Bullock appealed.

## II. Analysis

{¶ 13} Bullock raises three assignments of error. First, he argues that the trial court committed plain error by seating the alternate jurors and that his counsel was ineffective for failing to move for a mistrial both then and when the trial was continued due to a juror's injury. Second, he argues that the court erred by not declaring a mistrial based on

prosecutorial misconduct and that counsel was ineffective for failing to seek a mistrial on this basis. Third, he challenges his sentence as excessive.

**A. The Appellant's Burden in Appellate Review**

{¶ 14} "An appellant bears the burden of affirmatively demonstrating error on appeal and substantiating his arguments in support thereof." (Citation omitted.) *State v. Crawford*, 2024-Ohio-691, ¶ 14 (12th Dist.). App.R. 16(A)(7) requires an appellant's brief to include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." When a party fails to satisfy these requirements, App.R. 12(A)(2) authorizes an appellate court to disregard the assignment of error. *State v. Hall*, 2022-Ohio-1147, ¶ 212 (12th Dist.) (declining to review arguments presented "without any supporting argument" due to lack of briefing). This court has exercised that authority when an appellant offers nothing more than conclusory statements unsupported by meaningful legal analysis. *See, e.g., State v. Watson*, 126 Ohio App.3d 316, 321-322 (12th Dist. 1998); *Crawford* at ¶ 15-16 (overruling assignment of error where appellant "fails to cite to the record and does not offer any analysis of the assigned error").

{¶ 15} Appellate courts are neutral adjudicators, not advocates. It is not this court's duty "to 'root out' or develop an argument that can support an assigned error, even if one exists." *Crawford* at ¶ 15, quoting *Lebanon v. Ballinger*, 2015-Ohio-3522, ¶ 27 (12th Dist.). Nor is it our obligation to search the record for evidence supporting an appellant's argument as to alleged error. *Id.* As we have observed, an appellate court "is not a performing bear, required to dance to each and every tune played on an appeal." (Cleaned up.) *Watson* at 321.

**B. Juror Replacement and Trial Continuance**

{¶ 16} The first assignment of error alleges:

THE TRIAL COURT ERRED TO THE PREJUDICE OF DARIAN BULLOCK BY FAILING TO FORCE THE TWO RELUCTANT JURORS TO APPEAR IN THE COURTROOM, SETTING THE STAGE FOR A THREE-WEEK CONTINUANCE.

{¶ 17} In his first assignment of error, Bullock argues the trial court committed plain error by replacing two absent jurors with alternates and proceeding with trial. Bullock also argues that trial counsel rendered ineffective assistance by failing to request a mistrial when the jurors were replaced and when, subsequently, a third juror sustained a leg injury that required a three-week continuance of trial. Both arguments in Bullock's brief fail to satisfy the requirements of App.R. 16(A)(7).

## 1. The Plain-Error Claim Is Unsupported by Analysis

{¶ 18} Bullock asserts that the trial court's decision to seat alternate jurors when two originally selected jurors failed to appear on the second day of trial constituted plain error. But Bullock never actually analyzes whether the trial court's action satisfies the plain-error standard. His argument contains no discussion of whether the alleged error was obvious, whether it affected substantial rights, or whether it influenced the outcome of the proceedings. *See State v. Gray*, 2012-Ohio-4769, ¶ 58 (12th Dist.) (explaining that plain error exists only when the error is obvious and affects the outcome of the trial). Bullock simply describes the factual circumstances surrounding the jurors' absences, expresses displeasure that the trial court did not investigate the jurors' reasons more thoroughly, and asserts in conclusory fashion that an error occurred.

{¶ 19} We have explained that merely citing a legal standard without applying it to the facts does not satisfy the briefing requirements. In *Watson*, this court confronted an appellant who "cite[d] case law to support his conclusion" but "fail[ed] to apply the case law to the facts of this case and instead use[d] only conclusory statements to support his

assignment of error." *Watson*, 126 Ohio App.3d at 321. We held that such briefing was inadequate under App.R. 16(A)(7). So too here. Bullock mentions plain error but makes no attempt to demonstrate how the replacement of two absent jurors with duly selected alternates was obviously erroneous, let alone how it affected the outcome of a trial in which the jury acquitted him on multiple counts.

## 2. The Ineffective-Assistance Claim Is Similarly Deficient

{¶ 20} Bullock also contends that his trial counsel was ineffective for failing to request a mistrial when the alternates were seated and again when the trial was continued to accommodate a juror's injury. To prevail on an ineffective-assistance claim, a defendant must satisfy both prongs of the test established by the U.S. Supreme Court: counsel's performance must have been deficient, falling below an objective standard of reasonableness, and the deficient performance must have prejudiced the defense such that there is a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448.

{¶ 21} Bullock's brief cites *Strickland* but does not apply its framework to the facts of this case. His argument consists largely of the assertion that counsel should have requested a mistrial, without any analysis of why the failure to do so fell below an objective standard of reasonableness. He offers no legal authority establishing that the seating of alternate jurors or the granting of a continuance for juror incapacity would have provided grounds for a mistrial. Nor does he explain how a motion for mistrial under these circumstances would have been anything other than futile. "Trial counsel is not ineffective for failing to make a futile argument." (Citation omitted.) *State v. Trafton*, 2023-Ohio-122, ¶ 29 (12th Dist.).

{¶ 22} As to prejudice, Bullock's brief offers only speculation. He suggests that

during the three-week continuance, "jurors could easily have read about the case in the newspaper, watched reporting of the trial on the television, and/or discussed it with friends and family." But he points to nothing in the record indicating that any such exposure actually occurred. Speculation about what might have happened is not a substitute for evidence that it did. *See State v. Landrum*, 53 Ohio St.3d 107, 116-117 (1990). Bullock has not demonstrated a reasonable probability that the outcome of his trial would have been different absent the alleged deficiencies. Indeed, the jury's acquittal of Bullock on several counts and all firearm specifications suggests that the jury carefully weighed the evidence rather than acting under some improper influence.

{¶ 23} The burden rests on the appellant to demonstrate error with reasoned argument supported by citation to the record and legal authority. Bullock has not carried that burden. His plain-error claim is asserted without analysis of the plain-error standard. His ineffective-assistance claim is asserted without application of *Strickland*'s two-prong test. Both claims rest on speculation rather than record evidence. Under these circumstances, we exercise our discretion under App.R. 12(A)(2) to disregard Bullock's first assignment of error.

### 3. Even if Considered on the Merits, the Claims Would Fail

{¶ 24} Even setting aside Bullock's noncompliance with App.R. 16(A)(7), we would reject his arguments on the merits.

{¶ 25} A trial court's decision to replace a juror with an alternate is reviewed for an abuse of discretion. *State v. Goins*, 2001-Ohio-8647, 2001 WL 1525298, *7 (12th Dist.); *State v. Coleman*, 37 Ohio St.3d 286, 293 (1988). Both R.C. 2945.29 and Crim.R. 24(G)(1) authorize a court to discharge jurors who become unable to serve and to seat alternates in their place. Here, one juror reported illness and another could not attend due to weather. The court discharged both and seated the alternates selected during voir dire.

This is precisely the circumstance alternates exist to address. Bullock cites no authority requiring the court to investigate or compel attendance before exercising this statutory power, and we know of none.

{¶ 26} Nor did the court abuse its discretion by continuing the trial when a third juror was injured after all alternates had been seated. A continuance is a reasonable response when unforeseen circumstances render a juror unable to proceed. Mistrials are reserved for circumstances in which "the ends of justice so require and a fair trial is no longer possible." *State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168. A brief continuance to allow a juror's recovery does not meet that standard.

{¶ 27} The ineffective-assistance claim fares no better. Whether to seek a mistrial is a tactical decision within the range of competent representation. *State v. Gilbert*, 2011-Ohio-4340, ¶ 83 (12th Dist.). The record shows that counsel discussed the options with Bullock, who consented to the continuance. Counsel reasonably could have preferred proceeding with the existing jury over the uncertainty of a new trial. And because the court's actions were lawful, any mistrial motion would have been futile. Counsel is not ineffective for declining to pursue a meritless motion. *Graham*, 2014-Ohio-1891, ¶ 21.

{¶ 28} Finally, Bullock cannot show prejudice. His speculation that jurors were exposed to outside influence during the continuance finds no support in the record.

{¶ 29} The first assignment of error is overruled.

**C. Prosecutorial Misconduct and the Failure to Declare a Mistrial**

{¶ 30} The second assignment of error alleges:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF
> DARIAN BULLOCK WHEN IT FAILED TO CALL A MISTRIAL
> IN LIGHT OF PROSECUTORIAL MISCONDUCT.

{¶ 31} Bullock's second assignment of error faults the trial court for not declaring a mistrial based on prosecutorial misconduct. He points to testimony from James York,

the victim's grandfather, who remarked that he had not seen anyone as frightened as the victim since Vietnam. According to Bullock, the court should have issued a curative instruction, and the prosecutor's subsequent invocation of this testimony during closing argument only deepened the prejudice. He also asserts an ineffective-assistance claim, faulting counsel for not moving for a mistrial. Like the arguments supporting the first assignment of error, the arguments here fail to satisfy the requirements of App.R. 16(A)(7).

### 1. The Contentions Are Unsupported by Analysis

{¶ 32} Bullock's second assignment of error suffers from the same fundamental deficiency as his first: he recites legal standards but makes no attempt to apply them to the facts of his case.

{¶ 33} Regarding the Vietnam testimony, during James York's testimony the prosecutor asked York if he had "ever seen her [the victim] that upset or scared before." York replied,

> I've never seen her that upset. The only ones I've ever seen upset like that was maybe when I—I ran the light squared for ten years as a paramedic. And—and I've seen people really shook up at accidents or whatever. Sometimes people shoot each other. But what I—Vietnam—. . . I see people that—men that's faces would just be totally different than what they normally were because of the fear. Fear is real.

{¶ 34} Bullock's trial counsel objected to the testimony as unduly prejudicial, and the court overruled the objection. The prosecutor followed up with, "I just want to clarify your last statement, kind of before you got cut off. So, you were saying that you've not seen anyone as scared as Michaiah was that morning since Vietnam?" To this, York responded, "Yeah."

{¶ 35} Bullock calls York's statement "incendiary" but never explains why. He asserts that the comment was prejudicial but provides no analysis of how a passing

reference to the witness's past experience could have affected the outcome of his trial. The word "incendiary," standing alone, is a conclusion, not an argument. An appellate court should not be left to speculate about how a witness's reference to his personal history prejudiced the defendant. Without any explanation of the alleged prejudice, Bullock's contention is nothing more than a bare assertion unsupported by reasoned analysis.

{¶ 36} The same deficiency pervades Bullock's prosecutorial-misconduct claim. Bullock asserts that statements made by the prosecutor during closing arguments constituted prosecutorial misconduct. The prosecutor referred to York's testimony twice, first saying, "He [had] never seen her that upset and compared her emotional state to someone he had seen in Vietnam," and then saying, "Her grandpa stated he had not seen anyone that shaken up since Vietnam, and he'd never seen Michaiah like that before."

{¶ 37} While Bullock recites the legal standards governing prosecutorial misconduct, he never takes the next step of applying those standards to the prosecutor's conduct. He quotes our caselaw stating that "[f]or a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights." *State v. Warnock*, 2024-Ohio-382, ¶ 30 (12th Dist.). Yet he never explains how the prosecutor's closing argument was improper. Bullock never analyzes whether the prosecutor went beyond the evidence, expressed personal opinions of guilt, or vouched for witness credibility. He simply asserts that the prosecutor's references to York's testimony "rise to the level of prosecutorial misconduct" without any supporting analysis. This falls far short of the "reasons in support of the contentions" that App.R. 16(A)(7) requires.

{¶ 38} Bullock also includes a single statement referring to ineffective assistance of counsel for trial counsel's failure to request a mistrial following the Vietnam testimony.

But Bullock never applies the familiar two-prong test from *Strickland*, which requires a defendant to show both deficient performance and prejudice. He does not explain how trial counsel's performance fell below an objective standard of reasonableness. He does not analyze whether there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. Instead, Bullock offers only the conclusory assertion that defense counsel "should have requested a mistrial." This court has recognized that an appellant "provides no case law or legal argument regarding this particular issue in his appellate brief" when he merely makes an allegation without developing it. *Goins*, 2001 WL 1525298, at *6, fn. 2. An appellate court may disregard such an allegation of error. *Id.*

{¶ 39} In short, Bullock's brief under this assignment of error consists of quotations of legal standards interspersed with conclusory assertions. Nowhere does he engage in the analytical work of demonstrating how those standards apply to his case. Accordingly, we exercise our discretion under App.R. 12(A)(2) to disregard Bullock's second assignment of error.

**2. Even if Considered on the Merits, the Claims Would Fail**

{¶ 40} Even setting aside Bullock's noncompliance with App.R. 16(A)(7), we would reject his arguments on the merits.

{¶ 41} Because counsel objected to York's testimony but did not seek a mistrial, we review for plain error. *See* Crim.R. 52(B); *State v. Chisenhall*, 2024-Ohio-1918, ¶ 25 (12th Dist.). As we have already said, a mistrial is warranted only "when the ends of justice so require and a fair trial is no longer possible." *Garner*, 74 Ohio St.3d at 59.

{¶ 42} York's reference to Vietnam was a spontaneous observation meant to convey the depth of the victim's fear. It did not render Bullock's trial fundamentally unfair. The jury heard substantial evidence of guilt, including the victim's audio recording of the

- 12 -

altercation, testimony from multiple witnesses about her injuries and distraught condition, and the firearm recovered from the residence. Given this evidence, there is no reasonable probability that York's fleeting remark affected the outcome.

{¶ 43} The prosecutorial-misconduct claim is equally unavailing. Reversal requires proof that the prosecutor's conduct was both improper and prejudicial to the defendant's substantial rights. *Warnock*, 2024-Ohio-382, at ¶ 30. Prosecutors may comment on admitted evidence and its reasonable inferences. *Id.* at ¶ 38. Here, the prosecutor simply recounted York's testimony without embellishment or distortion. This is a far cry from cases like *State v. Smith*, 14 Ohio St.3d 13 (1984), where the prosecutor branded defense evidence "lies" and "garbage" while insinuating that counsel had suborned perjury. Because the challenged statements were not improper, the misconduct claim cannot succeed.

{¶ 44} The second assignment of error is overruled.

### D. Sentencing Challenge

{¶ 45} The third assignment of error alleges:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF
> DARIAN BULLOCK WHEN IT SENTENCED HIM TO SERVE
> TEN YEARS IN PRISON.

{¶ 46} Bullock's third assignment of error challenges his indefinite 10-to-15-year prison sentence. His sole contention is that the sentence was excessive. Bullock's argument in this assignment of error fails to satisfy the requirements of App.R. 16(A)(7).

### 1. The Contention Is Unsupported by Analysis

{¶ 47} Bullock's entire argument on this point consists of the conclusory assertion that the sentence was excessive. He quotes general propositions from R.C. 2929.11 concerning the overriding purposes of felony sentencing and states, without elaboration, that the sentence was excessive. Bullock does not identify any specific error in the trial

court's analysis. He does not argue that the trial court failed to consider the purposes and principles of sentencing under R.C. 2929.11. He does not contend that the trial court failed to weigh the seriousness and recidivism factors under R.C. 2929.12. He does not claim that the sentence fell outside the permissible statutory range. He does not point to any evidence in the record that the trial court purportedly overlooked or misweighed. In short, Bullock's argument "merely consists of the conclusory sentence" that his sentence was excessive, nothing more. *Crawford*, 2024-Ohio-691, at ¶ 15.

**{¶ 48}** Bullock's third assignment of error suffers from the same lack of adequate briefing that infected his first and second assignments of error, and we decline to address it. App.R. 12(A)(2).

### 2. Even if Considered on the Merits, the Sentencing Challenge Would Fail

**{¶ 49}** Even on the merits, Bullock's challenge fails. Under R.C. 2953.08(G)(2), we may vacate or modify a felony sentence only if we clearly and convincingly find that the record does not support the court's statutory findings or that the sentence is otherwise contrary to law. *State v. Marcum*, 2016-Ohio-1002, ¶ 23. Notably, the statute specifies that our "standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). We may not reweigh the evidence or substitute our judgment about which sentence best serves R.C. 2929.11 and 2929.12. *State v. Jones*, 2020-Ohio-6729, ¶ 42.

**{¶ 50}** A sentence is not clearly and convincingly contrary to law when the trial court considers the principles and purposes of sentencing under R.C. 2929.11, weighs the factors in R.C. 2929.12, properly imposes postrelease control, and sentences within the statutory range. *State v. Scott*, 2020-Ohio-3230, ¶ 54 (12th Dist.). The trial court did all of this. It expressly stated that it had considered the relevant statutory principles and factors, and it identified specific bases for its decision, including Bullock's relationship with

the victim facilitated the offense, R.C. 2929.12(B)(7); the victim suffered serious psychological harm including ongoing panic attacks, R.C. 2929.12(B)(2); Bullock has a history of criminal convictions, R.C. 2929.12(D)(2); he has not responded favorably to prior sanctions, R.C. 2929.12(D)(3); and he lacks genuine remorse, R.C. 2929.12(D)(5). These findings are well supported by the record. And the indefinite 10-to-15-year term for first-degree felony kidnapping falls squarely within the statutory range. R.C. 2929.14(A)(1)(a) and 2929.144(B)(1).

{¶ 51} Bullock's bare assertion that his sentence was excessive does not carry his burden. *See State v. Combs*, 2020-Ohio-5397, ¶ 29-34 (12th Dist.) (rejecting claim that sentence was excessive where defendant was sentenced within statutory range and trial court considered proper factors).

{¶ 52} The third assignment of error is overruled.

### III. Conclusion

{¶ 53} We have overruled each of the assignments of error presented. The trial court's judgment is affirmed.

PIPER, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robin N. Piper, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge