[Cite as *State v. Schwarz*, 2026-Ohio-1902.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-10-113 |
| vs. | : | OPINION AND JUDGMENT ENTRY 5/26/2026 |
| JOSEPH Z. SCHWARZ, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2025-01-0024

Michael T. Gmoser, Butler County Prosecuting Attorney, and Stephen M. Wagner, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**O P I N I O N**

**SIEBERT, J.**

{¶ 1} Joseph Schwarz appeals his convictions for abduction, strangulation, and felonious assault as well as the sentence imposed by the Butler County Court of Common Pleas. He contends (1) the trial court erred by failing to merge his convictions for sentencing purposes (and his counsel failed to raise this issue), (2) the State had

insufficient evidence for his felonious assault conviction, and (3) that his strangulation conviction was duplicitous. We overrule these assignments of error.

{¶ 2}  First, Schwarz's violent conduct caused various and separate injuries to the victim and were punctuated by Schwarz's drinking and the victim's attempts to escape. His offenses therefore could not be merged. Second, the evidence presented at trial more than adequately demonstrated Schwarz knowingly caused the victim serious physical harm when he repeatedly slammed a storm door on the victim's foot and broke her toe. Finally, the State adequately informed Schwarz as to what conduct supported his strangulation charge. This conclusion is reinforced by the fact that neither Schwarz nor Ohio caselaw discuss the prejudicial effect (if any) the alleged duplicity had within the context of his bench trial.

## Background

{¶ 3}  The underlying facts of this case are not contested. Schwarz and Jane[1] were in the early days of a relationship when she went to a Halloween party with her friends. However, Schwarz was not invited. Angered by this, Schwarz repeatedly called and texted Jane during the party from many different phone numbers after Jane blocked his main number. In a voicemail, Schwarz repeatedly hurled various vulgarities, slurs, and explicative words at Jane, saying (among many other heinous things) that he hoped Jane was raped at the party. Nonetheless, Jane left the party early the next morning and went to Schwarz's house. After Jane knocked on his door, Schwarz opened it and immediately began choking and pushing Jane. Jane then attempted to get back into her car, but Schwarz held the car door open to prevent her from leaving. Schwarz then got in the car

---

1. "Jane" is a pseudonym adopted for this opinion for the purposes of privacy and readability. See *State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.); Supreme Court of Ohio Writing Manual 115 (3rd Ed. 2024). This opinion uses pseudonyms for all children referenced.

and punched her in the eye.

{¶ 4} After punching Jane in the eye, Schwarz then drug her back to the house, threw her onto the couch, got on top of her, and put both hands over her mouth and nose (impeding her ability to breathe). Jane further testified that Schwarz repeatedly "would just pick me up by my neck and just wave me around" and that he bit Jane on the back of her head as well as on her jaw and hand. At one point, Jane attempted to escape through the garage, but Schwarz "caught [her] in time" at the storm door that led to the garage. Jane testified she could not get out because her leg got caught in the storm door as Schwarz pushed it shut and then repeatedly slammed it on Jane's foot. She was not wearing shoes. Jane alleged that after being forced back inside, she fell to the floor, at which point she told Schwarz he had broken her toe. Schwarz denied this before reaching down, putting his hands around her throat and impeding her breathing. Jane testified that when he did this, she saw "black" and "nothing." As the confrontation continued, Jane managed to exit the house via the back door, but Schwarz caught her after she fell outside. Schwarz then drug her back to the house (again) by her wrist.

{¶ 5} Schwarz drank alcohol throughout these events, and according to Jane, "If [Schwarz] didn't have a hand on me, his hand was on the bottle." After approximately three hours, Jane escaped from Schwarz's home. Unbeknownst to him, Jane had found her car keys during one of their struggles. She told Schwarz that one of his dogs left the home and managed to get to her car when they went out to investigate. When asked "In the entire three hours at any point, did the assaultive behavior stop?" Jane answered, "No."

{¶ 6} Jane reported the incident to the police that evening, and her injuries were photographed. When Jane went to the hospital, medical imaging revealed that her pinkie toe was fractured. In addition, medical staff observed extensive bruising and tenderness

all over her body, including her neck and wrists, as well as bite marks on her hand and jaw.

{¶ 7}   A grand jury indicted Schwarz for abduction, strangulation, and felonious assault. Schwarz agreed to a bench trial. At the trial, Jane, the investigating officers, and medical staff members who treated Jane testified as to the facts of the case and Jane's injuries. The trial court found Schwarz guilty of all charges and sentenced Schwarz to an indefinite aggregate term of 18 years in prison.

{¶ 8}   Schwarz now appeals.

**First Assignment of Error – Merger**

*Applicable Law*

Offenses

{¶ 9}   For purposes of this case, abduction occurs when one "by force or threat, remove[s] another from the place where the other person is found." R.C. 2905.02(A)(1). In turn, strangulation occurs when one "[c]ause[s] or create[s] a substantial risk of physical harm to another by means of strangulation or suffocation." R.C. 2903.18(B)(3). Finally, felonious assault occurs when one "[c]ause[s] serious physical harm to another." R.C. 2903.11(A)(1). All of these offenses must be committed knowingly. *See* R.C. 2905.02(A)(1), 2903.18(B)(3), and 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

Merger

{¶ 10} When a defendant is accused of two separate offenses of "similar import," the indictment may include both offenses, but the defendant may only be convicted of

one so as to prevent double jeopardy. R.C. 2941.25(A). However, when "the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each," a defendant can be convicted of both offenses. R.C. 2941.25(B). When considered together, these two statutory clauses only permit multiple convictions for multiple offenses if any one of the following applies: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 2015-Ohio-995, ¶ 13. Otherwise, the offenses must be "merged," and the court can only convict and impose a sentence on the defendant for one of the offenses. *See id*. If offenses are merged, the prosecution elects which offense it wishes to pursue for sentencing, and the trial court sentences the defendant on that elected offense. *See State v. Sperry*, 2025-Ohio-2626, ¶ 39 (12th Dist.).

{¶ 11} The test for determining whether multiple offenses are of "similar import" becomes critical in analyzing merger questions. If the defendant's conduct puts more than one individual at risk, the multiple offenses are of dissimilar import and merger will not be required. *Ruff* at ¶ 23, citing *State v. Jones*, 18 Ohio St.3d 116, 118 (1985) (holding dissimilar import resulting from one car accident with multiple victims); *State v. Franklin*, 2002-Ohio-5304, ¶ 48 (finding dissimilar import when defendant set one fire, placing six different people at risk). Likewise, multiple offenses are of dissimilar import if the resulting harm from each offense is separate and identifiable (i.e., one offense is not "incident" to the other). *Ruff* at ¶ 23.

{¶ 12} The focus of our analysis must be on the defendant's conduct and is fact dependent. *Id*. at ¶ 26. If any of the following is true, the defendant may be convicted and sentenced for multiple offenses:

(1) the offenses were dissimilar in import, determined by analyzing whether

    a. the defendant's conduct put more than one person at risk; or

    b. if each offense caused separate and identifiable harm

(2) the offenses were committed separately; or

(3) the offenses were committed with separate animus or motivation.

*Id.* at ¶ 25.

### *Standard of Review*

{¶ 13} The failure to raise the issue of merger at the trial level results in forfeiting that issue on appeal unless plain error is shown. *State v. Rogers*, 2015-Ohio-2459, ¶ 21-22. A party asserting plain error must show an obvious error by the trial court that affects that party's "substantial rights." *Id.* When merger is the subject to plain error review, a defendant must demonstrate "a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus . . ." *Id.* at ¶ 25. Nonetheless, the plain error doctrine should only be applied "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph 3 of syllabus.

### *Analysis*

{¶ 14} Schwarz argues the trial court erred by not merging his convictions for sentencing purposes. In summary, Schwarz contends his criminal conduct of "physical force . . . [that] was continuous and uninterrupted" in nature. As a result, Schwarz asserts that each offense was "incidental to the overall force . . . [and] caused variations of the same underlying harm" to Jane. Schwarz claims his "only animus was to punish [Jane] with physical force for being excluded from the Halloween party." We are unconvinced.

{¶ 15} Schwarz's description of his conduct is *far* too generalized. Schwarz of course is correct that he used "physical force" throughout the three-hour ordeal in which he beat, strangled, and restrained Jane. But defining his conduct as an indistinguishable use of physical force over a continuous three-hour assault is akin to defining a blade of grass and a turtle as the same thing because they are both green. Schwarz's argument also calls on this court to ignore the prong of *Ruff* which found offenses to have dissimilar import if they cause separate and identifiable harms. *Ruff*, 2015-Ohio-995, ¶ 25. We decline to ignore that binding precedent.

{¶ 16} As to Schwarz's conviction for abduction, he harmed Jane by removing her from where she was found—in Schwarz's backyard attempting to flee him—and forcefully taking her by the wrist and dragging her back to his house. The State presented medical evidence of bruising to Jane's wrists to establish this harm. The State similarly established via medical evidence separate harms to support a separate conviction for strangulation based upon the bruising to Jane's neck caused by Schwarz putting his hands across her throat (inhibiting her breathing). Finally, the State substantiated Schwarz's conviction for felonious assault by providing evidence of Jane's broken pinky toe caused by Schwarz slamming the storm door on it. Each of these harms are distinct enough to stand on their own and can be tied to specific, separately indicted actions of Schwarz. This alone defeats Schwarz's merger claim.

{¶ 17} Nonetheless, we conclude Schwarz's offenses were also committed separately. Though Jane testified Schwarz's "assaultive behavior" did not stop until she escaped, and the record does not specify the exact ordering or timing of events within that three-hour span, that does not mean that his actions were inseparable. In fact, according to Jane, Schwarz frequently stopped beating, strangling, and restraining her at various points throughout that evening so that he could drink liquor ("If [Schwarz] didn't

have a hand on me, his hand was on the bottle.").

{¶ 18} In addition, Schwarz's felonious assault and abduction charges occurred after two separate escape attempts—one through the garage storm door and one through the back door of Schwarz's home. Schwarz's strangulation of Jane was not incidental to the felonious assault because after Schwarz completed the action of repeatedly slamming the door on Jane's ankle as she attempted to escape, Jane retreated from the door before falling on the floor. Jane then accused Schwarz of breaking her toe, which he denied. At that point Schwarz came down to Jane on the floor and committed the separate action of strangling her by wrapping his hands around her throat and impeding her breathing to the point she saw "black" and "nothing." Stated more succinctly, Schwarz did not restrain Jane so that he could then beat or strangle her in a two-minute timespan. *Compare State v. Powih*, 2017-Ohio-7208, ¶ 40 (12th Dist.) (defendant's restraint of the victim in a bedroom—abduction—"was incidental to the commission of [subsequent] sex offenses"). Here, Schwarz did not stop quickly after causing a single harm to Jane—his distinct actions underlying the separate offenses, which lead to separate harms, spanned three hours.

{¶ 19} Schwarz has not remotely presented a reasonable probability that his offenses should have been merged under Ohio law. Because his offenses were of different import and committed separately, we need not analyze whether the offenses were also committed with separate animus or motivation.

{¶ 20} Within his first assignment of error, Schwarz also asserts that his trial counsel was ineffective for failing to raise the issue of merger. However, because we determined no valid merger argument could have been raised, we necessarily conclude Schwarz's counsel could not be ineffective for not raising a futile argument. *State v. Gray*, 2023-Ohio-338, ¶ 52 (12th Dist.).

{¶ 21} We overrule this assignment of error.

**Second Assignment of Error – Insufficient Evidence of Felonious Assault**

*Applicable Law and Standard of Review*

{¶ 22} Again, felonious assault occurs when one knowingly "[c]ause[s] serious physical harm to another." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 23} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31, citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

*Analysis*

{¶ 24} Schwarz argues that in order to be guilty of felonious assault, "knowledge of the probability for a fractured toe" was required to present sufficient evidence of felonious assault. We again disagree. Put simply, while Schwarz's definition of his conduct in the first assignment of error—"physical force"—was too broad, his definition of the knowledge required to commit felonious assault is too narrow. Schwarz did not have to know that slamming Carrie's foot in the garage door repeatedly would "probably" break her pinky toe specifically. He had to "know" that action would probably "cause serious

physical harm." Schwarz does not (and could not) make an argument as to why repeatedly slamming a door on one's leg would probably not cause serious physical harm.

{¶ 25} We overrule this assignment of error.

**Third Assignment of Error – Duplicity**

*Background*

{¶ 26} As previously mentioned, a grand jury indicted Schwarz for abduction, strangulation, and felonious assault in an indictment that described his crimes using their statutory definitions as laid out above. However, a later filed bill of particulars alleged Schwarz committed strangulation "by applying pressure with two hands to the front of [Jane's] throat, which impeded [her] ability to breathe." In closing arguments at the bench trial, the prosecutor stated "there were multiple instances where [Jane] was strangled" to the point her breathing was impeded. The first of these, according to the prosecutor, occurred when Schwarz threw her on the couch, straddled her, and put his hands across her mouth and nose. The second of these occurred after Jane attempted to escape through the storm door. After breaking her toe and retreating from the door, Jane fell to the floor, at which point the prosecutor stated Schwarz "applie[d] pressure with two hands across her neck . . . to the point where she can't breathe" and begins to see "black."

*Applicable Law*

{¶ 27} Ohio prohibits duplicity, which occurs in two ways: (1) duplicity in the indictment—"when two or more distinct offenses are alleged in a single count" or (2) duplicity in the charge—"when an indictment alleges only one criminal act, but the State introduces evidence of multiple incidents at trial to prove that single charged offense." *State v. Jones*, 2026-Ohio-68, ¶ 30-31 (12th Dist.). Schwarz contends the latter of these is at issue. "The prohibition against duplicity serves two key purposes: it protects an accused's Sixth Amendment right to receive notice of the nature of the charge and

prevents confusion regarding the basis for the verdict." *Id.* at ¶ 29. In practice, preventing duplicity "verif[ies] the *jury* unanimously agreed that the State proved the defendant committed a single, particular [criminal] act . . . beyond a reasonable doubt." (Emphasis added) *Id.* at ¶ 36.

*Analysis*

{¶ 28} With his final assignment of error, Schwarz argues that duplicity occurred in the underlying proceedings because "the prosecutor presented two strangulations to prove a single count for a single-act crime." We are again not convinced.

{¶ 29} We note at the onset that Schwarz did not raise this duplicity argument at the trial level, meaning he must demonstrate a plain error occurred. *See Jones* at ¶ 26-28. Yet, Schwarz's argument on appeal contains no reference to the plain error standard and whether the alleged duplicity was obvious, affected substantial rights, and influenced the outcome of the proceedings. *State v. Bullock*, 2026-Ohio-693, ¶ 18. Such an argument may have been difficult anyway because, as we have previously recognized, "Ohio law regarding duplicity in the charge questions remains largely unresolved." *Jones* at ¶ 32. This is particularly so when a case is tried via a bench trial and not a jury trial, eliminating concerns about jury unanimity. *See id.*

{¶ 30} Nonetheless, Schwarz contends duplicity occurred and prejudiced him because he does not know "the accusations lodged against him" or "what conduct supported the single [s]trangulation conviction." This assertion ignores the existence of the bill of particulars in this case. "A bill of particulars has a limited purpose to elucidate the conduct of the defendant alleged to constitute the charged offense." *State v. Fairbanks*, 2007-Ohio-4117, ¶ 22 (12th Dist.). Stated differently, it "set[s] out the ultimate facts upon which the state expects to rely in establishing its case, and the [S]tate upon supplying such bill should be restricted in its proof to the indictment and the particulars

as set forth in the bill." *State v. Miller*, 63 Ohio App.3d 479, 485-86 (12th Dist. 1989).

{¶ 31} Here, the indictment merely quoted the statutory definition of strangulation, which can be accomplished via strangling *or* suffocating an individual. However, the bill of particulars specifically alleged that Schwarz "appl[ied] pressure with two hands to the front of her throat, which impeded [Carrie's] ability to breathe." Schwarz is correct that Jane's testimony covered various instances where he put his hands on Jane's throat, nose, and mouth and that her testimony was inconclusive as to whether or not *most* of these actions impeded her breathing. The prosecutor's closing arguments also confusingly discussed multiple instances of strangulation *and* suffocation which impeded Jane's breathing.

{¶ 32} Ultimately, however, both Jane and the prosecutor's recounting of Schwarz's crimes provided the most detail on one particular instance of strangulation that occurred after Jane attempted to escape through the garage storm door before retreating back (with a broken toe) and falling to the floor. At that point, Schwarz put his hands around her throat and impeded her breathing to the point she saw "black" and "nothing." This description matches the allegations of the bill of particulars stating Schwarz committed strangulation "by applying pressure with two hands to the front of [Jane's] throat, which impeded [her] ability to breathe." As a result, we conclude the State adequately informed Schwarz as to what conduct supported the strangulation charge.

{¶ 33} In summary, Schwarz's failure to frame this issue within the context of plain error, the lack of authority on how duplicity in the charge should be evaluated in a bench trial setting, and the specific allegations of the bill of particulars are all considerations that obfuscate the existence of an error rather than making it obvious.

{¶ 34} We overrule Schwarz's final assignment of error.

{¶ 35} Judgment affirmed.

BYRNE, P.J., and HENDRICKSON, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Melena S. Siebert, Judge*

- 13 -