[Cite as *Patterson v. Jordan*, 2026-Ohio-1733.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
TUSCARAWAS COUNTY, OHIO

| | |
|---|---|
| SHAWN PATTERSON | Case No. 2025 AP 11 0036 |
| Plaintiff - Appellant | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2016 TC 12 0518 |
| SHELLI JORDAN | |
| | Judgment: Affirmed |
| Defendant - Appellee | |
| | Date of Judgment Entry: May 11, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** Shawn Patterson, Pro se, for Plaintiff-Appellant; Shelli Jordan, Pro se, for Defendant-Appellee.

*Hoffman, P.J.*

**{¶1}** Plaintiff-appellant Shawn M. Patterson ("Father") appeals the October 3, 2025 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, which overruled his objections to the magistrate's February 26, 2025 decision and approved and adopted the magistrate's recommendation to terminate the shared parenting plan between Father and defendant-appellee Shelli M. Jordan, fka Patterson, ("Mother"), grant sole custody of the parties' two minor children ("the Children," collectively; "Child 1" and "Child 2," individually) to Mother, and grant Father therapeutic visits only with the Children.  We affirm the trial court.

STATEMENT OF THE FACTS AND CASE

{¶2} Mother and Father were married in 2007. Father filed a complaint for divorce on December 22, 2016. Via Order of Divorce filed June 20, 2107, the trial court terminated the parties' marriage. The Order of Divorce incorporated the parties' Separation Agreement and Shared Parenting Agreement. Mother was designated the residential parent for school purposes and Father was ordered to pay child support. The Franklin County Department of Job and Family Services subsequently substantiated allegations the Children had been sexually abused by Mother's paramour. Via Judgment Entry filed May 25, 2022, Father was designated the residential parent. The trial court ordered Father to immediately enroll the Children in sexual abuse trauma counseling.

{¶3} On March 15, 2024, Mother filed an ex parte motion for emergency custody and a motion for reallocation of parental rights and responsibilities. Via Magistrate's Order issued the same day, the magistrate named Mother the temporary residential parent and legal custodian of the Children, effective immediately, and scheduled the matter for hearing on March 25, 2024. Father filed an answer requesting dismissal of Mother's motions. Following the hearing, the magistrate ordered Mother remain the temporary residential parent and legal custodian of the Children. By separate entry, the magistrate appointed Attorney Amber Zwick as guardian ad litem ("GAL") for the Children.

{¶4} The magistrate conducted a status conference on July 8, 2024. Father was ordered to pay his portion of the GAL deposit within 14 days. The magistrate conducted another status conference on August 19, 2024, at which Father reiterated his refusal to pay the GAL deposit or cooperate with her investigation. At Father's request, the trial court conducted an in-camera interview of the Children.

**{¶5}** The magistrate conducted a hearing on October 17, 2024. Neither Mother nor Father was represented by counsel. Mother called the GAL as her first witness. Father objected to the GAL's testimony. Father referenced the GAL's September 19, 2024 motion requesting the trial court "approve an additional deposit from each party in addition to paying their outstanding balance * * * before she is to continue to investigate in this matter." September 19, 2024 Motion for Additional Deposit for Guardian ad Litem Amber Zwick. Father asserted he did not "think she's been paid in full, so according to this she was supposed to be paid in full to be able to continue." Transcript of October 17, 2024 Hearing at p. 18. The magistrate responded, "So, the Court is not going to grant a motion where you are attempting to thwart the testimony of the Guardian, because you haven't followed a Court order. So that objection is denied." *Id*. at p. 19. Father continued to object throughout the testimony of the GAL.

**{¶6}** Via Decision filed February 26, 2025, the magistrate recommended the parties' Shared Parenting Plan be terminated and Mother be granted sole custody of the Children. The magistrate further recommended Father be granted therapeutic visits only with the Children at the discretion and direction of their counselors. Father filed an objection to the magistrate's decision on March 6, 2025, and an amended objection on March 12, 2025. Via Judgment Entry filed October 3, 2025, the trial court overruled Father's objections. The trial court approved and adopted the magistrate's recommendations and ordered the parties' Shared Parenting Plan be terminated and Mother be granted full custody of the Children. The trial court approved and adopted the magistrate's recommendation Father be granted therapeutic visits only at the discretion and direction of the Children's counselors, but added a review hearing should be

conducted to determine if Father's parenting time should be modified from that which had been previously ordered based upon ongoing counseling.

{¶7} It is from this judgment entry Father appeals, raising the following assignments of error:

I. THE TRIAL COURT VIOLATED APPELLANT'S SUBSTANTIVE DUE PROCESS RIGHTS.

II. THE TRIAL COURT VIOLATED APPELLANT'S PROCEDURAL DUE PROCESS RIGHTS.

III. THE TRIAL COURT ABUSED ITS DISCRETION BY EFFECTING A DE FACTO TERMINATION OF PARENTAL RIGHTS.

IV. THE TRIAL COURT ERRED BY RELYING ON A GUARDIAN AD LITEM WHO FAILED TO COMPLY WITH SUP.R. 48.

I, III

{¶8} We elect to address Father's first and third assignments of error together. In his first assignment of error, Father submits the trial court violated his substantive due process rights by failing to make a finding of parental unfitness. In his third assignment of error, Father contends the trial court abused its discretion by effecting a de facto termination of his parental rights.

{¶9} "Divorce and ancillary custody actions are purely matters of statute." *Hanna v. Hanna*, 2008-Ohio-3523, ¶ 9 (10th Dist.), citing *Shively v. Shively*, 1994 WL 521184 (10th Dist. Sept. 22, 1994), citing *State ex rel. Papp v. James*, 69 Ohio St.3d 373, 379 (1994). "R.C. 3109.04 governs the domestic relations court's allocation of parental

rights and responsibilities and sets forth the procedures and standards courts are to use in proceedings pertaining to such matters." *Id*. at ¶ 10, citing *Braatz v. Braatz*, 85 Ohio St.3d 40 (1999).

{¶10} Pursuant to R.C. 3109.04, a domestic relations court is required to make child custody determinations in divorce proceedings which involve minor children born during the marriage. R.C. 3109.04(A) ("In any divorce * * * proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, * * * the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage"). Further, "[w]hen making the allocation of the parental rights and responsibilities for the care of the children under this section * * * in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1).

{¶11} The underlying action herein involved the reallocation of parental rights following the parties' divorce. Father and Mother are the Children's parents; therefore, they "are on an equal footing before the law." *In re Perales*, 52 Ohio St.2d 89, 96 (1977). See also R.C. 3109.03 ("[w]hen husband and wife are . . . divorced, and the question as to the parental rights and responsibilities for the care of their children . . . is brought before a court . . . they shall stand upon an equality as to the parental rights and responsibilities"). Because the parties are the Children's parents, "a finding of unsuitability would not be appropriate and the welfare of the child [is] the only consideration before the court." *Perales* at 96. As such, we find the trial court did not violate Father's substantive due process rights by failing to make a finding Father was unfit before considering the Children's best interest.

{¶12} Turning to Father's third assignment of error, we note Father's parental rights were not, in any manner, terminated.

{¶13} In its October 3, 2025 Judgment Entry, the trial court approved and adopted the magistrate's recommendation Father be "granted therapeutic visits only [with the Children], at the discretion and direction of the children's counselors." February 26, 2025 Magistrate's Decision at p. 8. Father has made no attempt engage in such visits, nor has Father contacted the Children's counselors despite the trial court permitting him to do so.  Father's own actions are preventing him from reestablishing relationships with the Children.

{¶14} Father's first and third assignments of error are overruled.

II.

{¶15} In his second assignment of error, Father maintains the trial court violated his procedural due process rights by relying on hearsay statements and counselor recommendations without providing him with a meaningful opportunity to challenge the basis or reliability thereof.

{¶16} We note, Father has failed to identify where in the record the hearsay statements or counselor recommendations were admitted or where he objected thereto.

{¶17} "An appellant bears the burden of affirmatively demonstrating error on appeal and substantiating his arguments in support thereof." (Citation omitted.) *State v. Crawford*, 2024-Ohio-691, ¶ 14 (12th Dist.). Pursuant to App.R. 16(A)(7), an appellant's merit brief must include: "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

**{¶18}** Further, App.R. 12(A)(2) permits this Court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * * as required under App.R. 16(A)." The rationale for these requirements is clear: an appellate court cannot be expected to search the record to develop arguments on a party's behalf. *State v. Roman-Navarre*, 2025-Ohio-3156, ¶ 90 (5th Dist.). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." (Citation omitted.) *Dye v. J.J. Detweiler Enters.*, 2022-Ohio-3250, ¶ 68 (5th Dist.).

**{¶19}** Because Father has failed to comply with the Appellate Rules, we choose to disregard his second assignment of error.

**{¶20}** Father's second assignment of error is overruled.

IV.

**{¶21}** In his final assignment of error, Father argues the trial court erred in relying on the report and recommendation of the GAL. Specifically, Father asserts the GAL failed to conduct an independent investigation and did not remain neutral, in contravention to Sup.R. 48, and such failure rendered the GAL's report and recommendation unreliable.

**{¶22}** The role of a GAL is to protect the child's interest, ensure that the child's interests are represented throughout the proceedings, and assist the trial court in its determination of what is in the child's best interest. Sup.R. 48.03.

**{¶23}** Sup.R. 48.03(D) contains a non-exhaustive list of a GAL's duties and provides:

(D) Duties of the Guardian ad Litem. Unless specifically relieved by the court, the duties of a guardian ad litem shall include, but are not limited to, the following:

(1) Become informed about the facts of the case and contact all relevant persons;

(2) Observe the child with each parent, foster parent, guardian or physical custodian;

(3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

{¶24} A review of the record belies Father's assertion the GAL failed to comply with Sup.R. 48.03(D). The GAL attempted to conduct a full investigation, however, Father refused to pay the GAL his portion of the fees and refused to cooperate with the GAL's request for an interview. Father's actions created the alleged failure of GAL to comply with Sup.R. 48.03(D). Father cannot be the reason for the GAL's failure to comply with Sup.R. 48.03(D) and subsequently argue the GAL's report and recommendations are unreliable.

{¶25} The Ohio Supreme Court has held Superintendence Rules "are administrative directives only and are not intended to function as rules of practice and procedure." *In re Detention of Williams*, 2011-Ohio-803, ¶ 12. They are "purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants." *State v. Dillon*, 74 Ohio St.3d 166, 167 (1995). Applying these principles, "[c]ourts have generally held that a guardian ad litem's failure to comply

with Sup.R. 48 is not grounds for reversal of a custody determination." (Citations omitted.) *In re A.M.*, 2023-Ohio-1523, ¶ 15 (12th Dist.).

**{¶26}** Based upon the foregoing, we find any purported failure of the GAL to comply with any of the duties set forth in Sup.R. 48.03(D) does not constitute reversible error. See *In re C.H., Jr.*, 2026-Ohio-81, ¶ 94 (4th Dist.); *In re A.A.*, 2024-Ohio-224, ¶ 50 (10th Dist.).

**{¶27}** Father's fourth assignment of error is overruled.

**{¶28}** The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

**{¶29}** Costs to Appellant.

By: Hoffman, P.J.

Montgomery J. and

Popham, J. concur.